# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEONTAE TRAVOHN DAVIS,

     Petitioner,

v.

JEFFREY WOODS,

     Respondent,

_____/

Civil No. 2:14-CV-11015
  HONORABLE SEAN F. COX
   UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Deontae Travohn Davis, ("petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for conspiracy to commit first-degree murder, Mich. Comp. Laws,§§ 750.157a; 750.316; seven counts of attempted murder, Mich. Comp. Laws, § 750.91; one count of placing offensive or injurious substances in or near real or personal property, Mich. Comp. Laws, § 750.209(1)(b); one count of conspiracy to commit arson of a dwelling house, Mich. Comp. Laws, §§ 750.157a; 750.72; and one count of arson of a dwelling house, Mich. Comp. Laws, § 750.72. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Saginaw County Circuit Court, in which he was tried jointly with several co-defendants. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion,

1

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner*

*v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from events that occurred on December 10, 2007, in Saginaw, Michigan. According to the testimony of witnesses, including that of Darell Hewitt, who agreed to testify "truthfully and completely ... about the events that occurred December 10th, 2007," [1] he, defendant, Caprice Mack, Dquan Favorite, Arnell Johnson, Jeremy Williamson and Deshawn Christopher were drinking and playing games at a house on Sanford Street when Tonya Wilson's car was burned. Travis Crowley [2] testified that his girlfriend, April Johnson, called him and told him that her mom's car "got blew up." Crowley said that Mack got on the phone and told him that "some boys had blew up Tonya['s] car, so ... they said that they was gonna take care of it."
>
> According to Hewitt, after Wilson's car burned, defendant and Favorite discussed retaliating against persons at a duplex located at 1622 Farwell Street in Saginaw because they thought Ronell Hinley had burned the car. Hewitt said that the group planned "to set the [Farwell] car on fire" and "to shoot anybody that come [sic] out of the house." Hewitt testified, however, that there was no agreement to set fire to the house or to kill anyone.
>
> The evidence indicated that defendant, Hewitt, Favorite, Mack, Johnson and Williamson went to the house at Farwell to set the car on fire, but they failed to successfully do so. The men returned to the house on Sanford and then defendant, Hewitt, Favorite, Mack and Christopher made a second trip to the Farwell house. Defendant and Mack went into the garage with containers of gasoline and then ran

---

[1] In return for his testimony, the prosecutor's office would dismiss the charge of conspiracy to commit first-degree murder and allow him to plead guilty to the remaining charges. Hewitt was charged with one count of conspiracy to commit first-degree premeditated murder, seven counts of attempted murder, one count of placing offensive or injurious substances in or near real or personal property, one count of conspiracy to commit arson of a dwelling house, one count of arson of a dwelling house, and one count of possession of a firearm during the commission of a felony (felony-firearm). Hewitt's delayed application for leave to appeal was denied. *People v. Hewitt*, unpublished order of the Court of Appeals, entered July 8, 2009 (Docket No. 292322)(Footnote original).

[2] Travis Crowley, who was incarcerated for carjacking and unarmed robbery at the time of trial, said that he was at a duplex located at 1624 Sanford Street in Saginaw, MI, at the time of the fire but ultimately refused to testify. He denied being threatened or intimidated. As a result of Crowley's refusal to testify, his preliminary examination testimony was read to the jury. (Footnote original).

out. This time, the car in the Farwell house garage was set on fire. There was evidence that Hewitt and Favorite had guns and that as the fire at the Farwell house spread from the garage to the house, people began to leave the house, and Hewitt and Favorite shot at the people as they left.

Defendant, Favorite, and Mack, who were all tried together, moved for a directed verdict on all counts. Defendant argued that Hewitt's testimony, in a light most favorable to the prosecutor, showed that there was a plan to burn a car in the Farwell house's garage. Defendant argued that this was insufficient to support a charge of attempted murder or conspiracy to commit first-degree murder. The trial court, concluding that the combination of starting a house on fire at 2:00 a.m. and shooting at people as they exited the house "establish[ed] evidence of attempt to murder," denied the motion for directed verdict as to all three defendants. On July 2, 2009, defendant moved for a new trial on the basis of newly discovered evidence, the evidence being an affidavit, purportedly from Hewitt, wherein Hewitt claims that he lied at trial to save himself, and that defendant "is innocent of all charges." The trial court denied the motion without an evidentiary hearing, and this appeal ensued.

*People v. Davis,* No. 290131, 2010 WL 2507029, * 1 (Mich.Ct.App. June 22, 2010).

Petitioner's conviction was affirmed on appeal. *Id.*

The Michigan Supreme Court remanded the case to the Michigan Court of Appeals for consideration of an issue raised by petitioner but not addressed in that court's opinion, namely, whether the circuit court erroneously allowed the statement of petitioner's co-defendant to be introduced into evidence through the preliminary examination testimony of another witness. *People v. Davis*, 488 Mich. 946, 790 N.W. 2d 401 (2010).

On remand, the Michigan Court of Appeals again affirmed petitioner's conviction. *People v. Davis,* No. 290131, 2011 WL 921656 (Mich.Ct.App. March 17, 2011)(On Remand). The Michigan Supreme Court subsequently denied petitioner leave to appeal. *People v. Davis*, 489 Mich. 993, 800 N.W.2d 78 (2011).

Petitioner subsequently filed a motion for relief from judgment, which was denied by the trial court. *People v. Davis,* No. 08-0320280-FC (Saginaw Cty. Cir. Ct., Sept. 7, 2012); *reconsideration*

*den.* (Saginaw Cty. Cir. Ct. Oct. 3, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. Davis*, No. 314940 (Mich.Ct.App. Sept. 6, 2013); *lv. den.* 495 Mich. 918; 840 N.W.2d 361 (2013).

Petitioner filed a habeas petition, which was held in abeyance to permit petitioner to return to the state courts to exhaust additional claims.

Petitioner filed a second motion for relief from judgment, which was denied. *People v. Davis,* No. 08-0320280-FC (Saginaw Cty. Cir. Ct., Apr. 7, 2015). The Michigan appellate courts denied leave to appeal. *People v. Davis,* No. No. 328287 (Mich.Ct.App. Oct. 14, 2015); *lv. den.* 500 Mich. 853, 883 N.W. 2d 751 (2016).

On October 12, 2016, this Court granted petitioner's motion to reopen the habeas case and to amend the petition. In his amended petition, petitioner seeks relief on the following grounds:

I. There was insufficient evidence to convict the Petitioner of conspiracy to commit first-degree murder, in doing so violated Petitioner [sic] Fourteenth Amendment constitutional right to due process.

II. There was insufficient evidence to convict the Petitioner of attempted murder, in doing so violated Petitioners [sic] Fourteenth Amendment constitutional rights to due process.

III. The trial court violated Petitioners [sic] Fifth Amendment constitutional rights when allowing multiple counts and charges without new (separate) elements, thus violating Petitioners [sic] constitutional protection against double jeopardy.

IV. The cumulative effect of all these errors violated Petitioners [sic] Fourteenth Amendment constitutional rights to a fair trial, simply because the errors were so prejudicial they clearly denied Petitioner a fair trial.

V. The trial court violated Petitioners [sic] Sixth Amendment constitutional rights to a public trial, when the trial court concluded vior [sic] dire of the prospective jurors in secrecy in a star chamber like atmosphere, to the extent that the proceeding was conducted outside of the presence of the general public, resulting in structural error.

VI. The circuit court was divested of jurisdiction to try Petitioner for the crime in question because the bind over was predicated sole [sic] upon perjured testimonial evidence presented during the preliminary examination by the prosecutors [sic] key witnesses. which [sic] constitutes a radical jurisdictional defect.

VII. The trial court violated Petitioners [sic] Fourteenth Amendment right to due process, as well abused its discretion when his instruction to the jury vouched for prosecution witness Darell Hewitts [sic] credibility was erroneous.

VIII. The trial court violated Petitioners [sic] Fourteenth Amendment right to due process, as well abused its discretion by never addressing Petitioner [sic] request for a handwriting expert. In doing so denied Petitioner [sic] rights to present defense, rendering Petitioner unfair trial [sic].

IX. The trial court violated Petitioners [sic] Fourteenth Amendment constitutional rights to a fair trial as well abused its discretion by erroneous charge to the jury.

X. The trial court violated Petitioners [sic] Sixth Amendment constitutional rights to effective assistance of counsel, in doing so denied Petitioners [sic] Fourteenth Amendment constitutional rights to due process, and abused its discretion by denying Petitioners [sic] motion for substitution of counsel.

XI. Petitioner was denied his Sixth Amendment constitutional rights to effective assistance of counsel, when counsel failed to adequately perform his professional responsibilities as counsel by failing to engage in any form of investigatory interviews of the prosecutions [sic] case to any meaningful adversarial testing, before or at trial.

XII. Petitioner was denied his Sixth Amendment constitutional rights to effective assistance of appellant counsel, when counsel failed to adequately investigate Petitioners [sic] appeal, in which counsel also failed to raise effective issues.

XIII. Petitioner was denied his Fourteenth Amendment constitutional rights to a fair trial when the prosecutor plead [sic] to the jury to commit a "civic duty" by returning a guilty verdict upon Petitioner.

XIV. Petitioner was denied his Fourteenth Amendment constitutional rights to a fair trial when the prosecutor lied to the jury stating Petitioner threatened to kill prosecution witness.

XV. Petitioner was denied his Fourteenth Amendment constitutional rights to a fair trial when the prosecutor inflamed the passion of the jury during closing arguments.

XVI. Petitioner was denied his Fourteenth Amendment constitutional rights to a fair

trial when the prosecutor deliberately offered unsworn testimony as evidence, during direct-examination of Travis Crowley.

XVII. Petitioner was denied his Fourteenth Amendments [sic] constitutional rights to a fair trial when the prosecution commented on Petitioners [sic] silence, in doing so violated Petitioners [sic] Fifth Amendment constitutional rights to stand mute.

XVIII. Petitioner was denied his Fourteenth Amendment constitutional rights to a fair trial when the prosecution inserted erroneous arguments that made the jury divert from evidence at trial, to speculating on the improper statements as evidence. Also insert additional inculpatory evidence, which was not evidence at trial, misstated the evidence, mislead the jury with erroneous statements, making himself an unsworn witness.

XIX. Declaring Travis Crowley unavailable after he had already testified on direct examination, thus limiting Petitioner [sic] ability to cross-examine his testimony he had made during direct, in doing so violated Petitioner [sic] right to crossexamination of witness against him, which is secured by the Confrontation Clause of the Sixth Amendment's [sic].

XX. Petitioner was denied his Sixth Amendment right to confrontation where prosecution witness Crowleys [sic] preliminary examination testimony was admitted at trial. However, Petitioner did not have an opportunity to fully and adequately cross-examine witness Crowley at preliminary examination.

XXI. The trial court violated Petitioners [sic] Sixth Amendment rights to confrontation when allowing the statement of Petitioners [sic] codefendant Caprice Mack, to be introduced into evidence through the preliminary examination testimony of Travis Crowley.

XXII. The trial court violated Petitioners [sic] due process rights secured by the Fifth and Fourteenth Amendments of the Constitution, when denying Petitioners Sixth Amendment right to Confrontation Clause.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar

federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Court recognizes that petitioner's seventh through eighteenth claims were raised on his his first-post-conviction motion for relief from judgment. The trial judge denied these claims by stating: "Defendant raises a number of issues none of which have merit." *People v. Davis,* No. 08-0320280-FC, * 2 (Saginaw Cty. Cir. Ct., Sept. 7, 2012). The Michigan appellate courts denied petitioner leave to appeal in form orders pursuant to Mich.Ct.R 6.508(D). *People v. Davis*, No. 314940 (Mich.Ct.App. Sept. 6, 2013); *lv. den.* 495 Mich. 918; 840 N.W.2d 361 (2013). The Sixth Circuit has held that the form order used by the Michigan appellate courts to deny leave to appeal in this case are unexplained because the citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir.2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan appellate courts' decisions to determine the basis for the denial of state post-conviction relief.

The trial judge rejected petitioner's claims without citing to Rule 6.508 or any other procedural bar when he denied the motion for relief from judgment. This Court therefore presumes that the trial court adjudicated these claims on the merits for purposes of invoking the AEDPA's deferential standard of review. *See Harrington v. Richter*, 562 U.S. at 99 (stating that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary"). More importantly, the trial judge explicitly indicated that he was rejecting petitioner's claims on the merits, albeit in summary fashion. The trial court's order is thus entitled to AEDPA deference. *See Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

Finally, the Court notes that petitioner filed a petition raising twenty two claims. The Sixth Circuit observed: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." *Fifth Third Mortgage v. Chicago Title Ins.*, 692 F.3d 507, 509 (6th Cir. 2012).

### III. Discussion

### A. Petitioner concedes that two of his claims are non-cognizable.

In his reply brief, petitioner concedes that his fourth claim alleging cumulative error and his sixth claim challenging the improper bindover to circuit court are non-cognizable on habeas review. *See* Reply Brief, pp. 7-8, 12. A habeas petitioner can withdraw a claim from a habeas petition as long as he or she does so knowingly, voluntarily, and intelligently. *Daniel v. Palmer*, 719 F. Supp. 2d 817, 828 (E.D. Mich. 2010); *rev'd on other grds sub nom. Daniel v. Curtin*, 499 F. App'x. 400 (6th Cir. 2012). This Court construes petitioner's concession as a request to withdraw these two

claims from consideration.

**B. Claims # 3, 5, 21, and 22.  The procedurally defaulted claims.**

The Court will discuss petitioner's procedurally defaulted claims first for judicial economy and clarity.  Respondent claims that petitioner's third, fifth, twenty first and twenty second claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Court discusses the procedural defaults in the chronological order that they occurred.

Respondent contends that petitioner's twenty first and twenty second claims are procedurally defaulted because petitioner failed to preserve the issues by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claims for plain error only. *Davis,* 2011 WL 921656, at * 3-5.

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his Confrontation Clause claims involving the admission of Caprice Mack's out of court statements. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's twenty first and twenty second claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claims for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of petitioner's twenty first and twenty second claims does not mean that these claims were not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's twenty first and twenty second claims are procedurally defaulted.

Petitioner has offered no reasons for his failure to preserve these two claims. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised several ineffective assistance of trial counsel claims in his first post-conviction motion, but did not raise a claim that trial counsel was ineffective for failing to object to the admission of Caprice Mack's out of court statements. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the admission of Mr. Mack's extrajudicial statements, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684

(E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his twenty first and twenty second claims. *Smith*, 477 U.S. at 533.

Petitioner's third claim is procedurally defaulted because he raised this claim in his second post-conviction motion for relief from judgment and the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court relied on M.C.R. 6.502(G) to reject petitioner's post-conviction motion.

Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically file only one motion for relief from judgment with regard to a criminal conviction. *See Banks v. Jackson,* 149 F. App'x. 414, 418 (6th Cir. 2005); *Mohn v. Bock,* 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to *People v. Ambrose*, 459 Mich. 884; 587 N. W. 2d 282 (1998)). However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks,* 149 F. App'x. at 418; *Mohn,* 208 F. Supp. 2d at 801; *Hudson,* 68 F. Supp. 2d at 800-01.

The trial court rejected petitioner's second motion for relief from judgment pursuant to M.C.R. 6.502(G), because petitioner had already filed a motion for relief from judgment and had failed to either raise a claim based on a retroactive change in the law or present new evidence to the trial court which would entitle him to file a second motion for relief from judgment pursuant to M.C.R. 6.502(G)(2). The Michigan appellate courts likewise rejected petitioner's appeal for lack of jurisdiction pursuant to M.C.R. 6.502(G), because a defendant cannot appeal the denial or

12

rejection of a successive motion for relief from judgment.

Petitioner filed his first post-conviction motion in 2012. At the time that petitioner filed his first motion, M.C.R. 6.502(G) was a firmly established and regularly followed procedural rule that would be sufficient to invoke the doctrine of procedural default. *See Porter v. Smith,* 197 F. Supp. 2d 827, 832-33 (E.D. Mich. 2002). Because petitioner's third claim was rejected by the Saginaw County Circuit Court and the Michigan appellate courts pursuant to M.C.R. 6.502(G), the claim is procedurally defaulted. *Id.*

Petitioner has offered no reasons for failing to raise his third claim involving an alleged double jeopardy violation on his first post-conviction motion. Appellate counsel's failure to raise this claim on petitioner's direct appeal is immaterial, because petitioner could still have exhausted this claim properly in his first state post-conviction motion. *See Gadomski v. Renico,* 258 F. App'x. 781, 784 (6th Cir. 2007). Petitioner has failed to establish cause to excuse his default.

Respondent argues that petitioner's fifth claim alleging a violation of his right to a public trial is procedurally defaulted because he never presented this claim to the state courts and no longer has a remedy to exhaust this claim.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275-78 (1971). Federal district courts normally must dismiss mixed habeas petitions which contain both exhausted and unexhausted claims. *See Pliler v. Ford,* 542 U.S. 225, 230 (2004)(*citing Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982)).

Unfortunately, petitioner no longer has any available state court remedies with which to exhaust this claim. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted

to file one post-conviction motion for relief from judgment. Petitioner has no remaining state court remedies with which to exhaust his fifth claim. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse petitioner's failure to raise this claim on his direct appeal, it does not excuse petitioner's own failure to exhaust this claim in either of his post-conviction motions for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x. at 784.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third, fifth, twenty first and twenty second claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claims [Claim # 1 and 2] are insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Moreover, although prosecution witness Darrel Hewitt subsequently recanted his trial testimony, this would be insufficient evidence of actual innocence to excuse petitioner's default. Recantation testimony is regarded with "extreme suspicion," thus, Mr. Hewitt's alleged recantation is not the type of reliable evidence that would establish petitioner's actual innocence to excuse his default. *See Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006). In particular, "[p]ostconviction

statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." *See Allen v. Yukins,* 366 F. 3d 396, 405 (6th Cir. 2004)(post-conviction affidavits of habeas petitioner's two codefendants were legally insufficient to establish that she was actually innocent, so as to toll the AEDPA's statute of limitations; affidavit was inherently suspect because the codefendant could have signed it to help petitioner without endangering his own interests); *In re Byrd,* 269 F. 3d 561, 574 (6th Cir. 2001)(petitioner did not satisfy the miscarriage of justice exception necessary to reach the merits of a successive habeas petition, where the evidence of actual innocence was an affidavit from a co-defendant which was made six years after the co-defendant had been convicted and sentenced for his part in the crime and the co-defendant's confession was made only after he was no longer subject to further punishment for his actions for these crimes). "[R]easonable jurors no doubt could question the credibility of this about face from [Hewitt] and rationally could discount his testimony as nothing more than an attempt to keep from being 'pegged as a rat' for having originally identified" petitioner as being involved with this crime. *See McCray v. Vasbinder,* 499 F.3d 568, 574 (6th Cir. 2007).

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's twenty first and twenty second claims, and by the Assistant Michigan Attorney General in her answer to the petition for writ of habeas corpus, petitioner has failed to show that his procedurally defaulted claims have any merit.

Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### C.  Claims # 1 and # 2.  The sufficiency of evidence claims.

Petitioner claims that there was insufficient evidence to convict him of conspiracy to commit first-degree murder and attempted murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so

insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Petitioner first contends that there was insufficient evidence to convict him of conspiracy ro commit murder. The Michigan Court of Appeals rejected his claim:

> Viewing the evidence in a light most favorable to the prosecution, the evidence supports the prosecution's theory that defendant conspired with Darell Hewitt, Caprice Mack, and Dquan Favorite to kill the occupants of a house located on Farwell Street in Saginaw, MI. Hewitt testified that after Tonya Wilson's car was burned, the group discussed retaliating and picked out the target of the retaliation. According to Hewitt, defendant and Favorite stated that the Farwell house was to be the focus of the retaliation. Hewitt testified that the group planned to set a car on fire located at the residence and "to shoot anybody that come [sic] out of the house" to escape the fire. Hewitt said that defendant, Mack, Arnell Johnson, and Jeremy Williamson brought the gasoline to be used to set the fire, and that he and Favorite brought handguns to shoot at those exiting the house. Hewitt said that when the group got to the Farwell house, he and defendant went to the house's driveway, Favorite and Mack went across the street, and Johnson and Williamson went into the garage. Failing to set the car on fire, the six men returned to the house where they had been playing games and drinking. At the suggestion of defendant and Favorite, defendant, Mack, Hewitt, Favorite, and Deshawn Christopher agreed to make a second trip to the Farwell house. On the second trip, defendant and Mack were going to start the car on fire, Hewitt and Favorite were supposed to shoot people that came out of the house, and Christopher was the lookout.

> Hewitt said that he watched defendant and Mack go into the garage with the containers of gasoline and then come running out. Hewitt said that he ran across the street, looked back, and saw that the car parked in the Farwell house's garage was on fire. Travis Crowley said that after a few minutes, the fire spread from the garage to the house, and after about ten or 15 minutes, people began to leave the house. Hewitt said that from across the street, he and Favorite started shooting at the people when they came out of the house. Crowley recalled that defendant said later, "That's how you set a fire."

> Hewitt did testify on cross-examination that there had been no agreement to set the house on fire or to kill its occupants. As instructed, however, the jury was free to believe or disbelieve, in whole or in part, the testimony presented at trial. We will not engage in second-guessing the jury's determination of witness credibility and reweigh the evidence.

*People v. Davis,* 2010 WL 2507029, * 2-3 (internal citations omitted).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(quoting *People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N. W. 2d 681 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.*

"Under Michigan law, anyone who knowingly agrees with someone else to commit first degree premeditated murder is guilty of conspiracy to commit first degree premeditated murder[,]." *Bechtol v. Prelesnik*, 568 F. App'x. 441, 449 (6th Cir. 2014). Under Michigan law, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *Cameron,* 348 F. Supp. 2d at 839 (quoting *People v. Buck*, 197 Mich. App. 404, 412; 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993)). "The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim." *Id.*

To obtain a conviction for first-degree murder, the prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. See *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v.*

*Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer*, 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

The evidence, when viewed in a light most favorable to the prosecution, clearly established that petitioner conspired with the other defendants to kill the victims. Petitioner and his co-defendant Favorite discussed retaliating after Tonya Wilson's car was burned. Petitioner and the other defendants planned on setting the victims' house on fire and shooting anyone who escaped from the house. Petitioner participated in the conspiracy by bringing gasoline to the fire. Petitioner and co-defendant Mack actually set the car on fire and remained at the scene when the other defendants shot at the victims as they were escaping the burning house. Petitioner is not entitled to habeas relief on his first claim because the Michigan Court of Appeals reasonably concluded that from the evidence a rational trier of fact could have found the essential elements of conspiracy to commit first degree murder beyond a reasonable doubt. *Bechtol v. Prelesnik*, 568 F. App'x. at 449.

In his second claim, petitioner contends that there was insufficient evidence to support his convictions for attempted murder. The Michigan Court of Appeals rejected this claim:

> Our review of the record in this matter leads us to conclude that the evidence presented was sufficient for a rational trier of fact to infer defendant's intent to kill from his acts. Defendant and his conspirators suspected that a man who resided at the Farwell house had burned Wilson's car. Hewitt testified that defendant and Favorite wanted to retaliate for the burning. According to Crowley, Mack told him, "Man, Bro, some n* * * * done blew up mom's car, but yeah, we got these bombs, they gonna get 'em back, we gonna take care of it." The actions taken in furtherance of the plan are set forth above. Given that the fire was started at a time when people are typically home

and sleeping, and that the group planned to shoot at anyone who exited the house, a rational jury could conclude that defendant and his codefendants intended that the fire would spread to the attached house and kill those inside. Accordingly, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt of attempted murder.

*People v. Davis*, 2010 WL 2507029, * 4.

Attempted murder and assault with intent to murder are considered to be mutually exclusive crimes. *People v. Long*, 246 Mich. App 582, 589; 633 N.W. 2d 843 (2001). The attempted murder statute, Mich. Comp. Laws, § 750.91, is intended to prohibit any attempts at murder that are beyond the assault with intent to murder statute. *People v. Smith*, 89 Mich. App 478; 280 N.W.2d 862 (1979). The elements of attempted murder are: (1) that the defendant attempted to commit the crime of murder; and (2) that the attempt at murder did not involve an assault. *Long,* 246 Mich.App at 589. The prosecutor is required to show that the defendant intended to cause a death. *Id.* In order to prove that a defendant is guilty of attempted first-degree murder under Michigan law, the prosecutor must establish that the defendant acted with premeditation and intent to kill. *DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998). Attempted murder is a specific intent crime, thus, a defendant's intent to bring about a death may not be established by a defendant's negligent or reckless actions. *Long,* 246 Mich. App. at 589. A defendant's intent to kill can be inferred from his actions. *People v. Ng*, 156 Mich. App 779, 785; 402 N.W. 2d 500 (1986).

Petitioner's act of intentionally setting fire to an occupied house clearly supports an inference of an intent to kill so as to support his attempted murder convictions. *People v. Long*, 246 Mich. App at 589-90. Petitioner is not entitled to relief on his second claim.

**D. Claims # 7 and # 9. The jury instruction claims.**

In his seventh and ninth claims, petitioner alleges that the jury instructions were defective.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In his seventh claim, petitioner contends that the judge's cautionary accomplice instruction vouched for Mr. Hewitt's credibility. The judge gave the jurors the standard instruction on assessing the credibility of an accomplice who testifies against a criminal defendant. The judge specifically warned the jurors that they "should examine an accomplice's testimony and be careful about accepting it." (Tr. 11/24/08, p. 113). Although advising the jury

that they could consider an accomplice's testimony to convict a defendant, the judge also advised the jurors to consider whether the "accomplice's testimony was falsely slanted to make the defendant seem guilty because of the accomplice's own interests, bias, or for some other reason?" (*Id.,* at 114). The judge also warned the jurors to consider whether the accomplice had been offered a reward or promised a plea bargain or a lesser sentence in exchange for his testimony. The judge advised the jurors that Mr. Hewitt had, in fact, been offered a plea bargain to testify against petitioner. The jurors were also advised to consider whether the accomplice had a prior criminal record. (*Id.*). Finally, the judge instructed the jurors to consider an accomplice's testimony "more cautiously than you would an ordinary witness. You should be sure to have examined it closely before you base a conviction on it." (*Id.*, p. 114).

When viewed in its entirety, the judge's instruction did not bolster Mr. Hewitt's credibility but in fact did the exact opposite. There is no constitutional problem to instruct a jury to receive an accomplice's testimony "with care and caution." *Cool v. United States,* 409 U.S. 100, 103 (1972). The accomplice instruction as a whole did not deprive petitioner of a fair trial. Petitioner is not entitled to relief on his seventh claim.

In his ninth claim, petitioner contends that the judge instructed the jurors to find him guilty.

The general rule in a criminal case is that a trial court may not direct a verdict of guilty. *Krzeminski v. Perini,* 614 F. 2d 121, 124 (6th Cir. 1980*); Schwachter v. United States*, 237 F.2d 640, 644 (6th Cir. 1956). The judge in this case, however, did no such thing. The judge said the following during the jury instructions:

> Deontae Davis, Dquan Favorite, and Caprice Mack are all on trial in this case. The fact that they are on trial together is not evidence

that they were associated with each other or that they are all guilty.

You should consider – *or, in fact, that they are guilty.*

You should consider each defendant separately.  Each is entitled to have his case decided on the evidence and the law that applies to him.

(Tr. 11/24/08, p. 109)(emphasis added).)

The transcript clearly shows that the judge did not instruct the jurors to find petitioner guilty but was merely correcting his prior instruction, in which the judge instructed the jurors that the fact that the defendants were being tried together was not evidence that any or all of them were guilty.  Petitioner's ninth claim is meritless.

**E.  Claim # 8.  The expert witness claim.**

Petitioner claims that his right to present a defense was violated when the judge ignored petitioner's request to appoint a handwriting expert to verify that Darrel Hewitt had written a letter to petitioner's lawyer, in which Hewitt allegedly recanted his allegations against petitioner.  When confronted with this letter at trial by counsel, Mr. Hewitt denied writing the letter.

The U.S. Supreme Court precedent that would most closely address petitioner's claim is *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), where the U.S. Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

The Supreme Court, however, has never extended the rule in *Ake* to apply to the appointment of non-psychiatric experts.  In *Caldwell v. Mississippi,* 472 U.S. 320, 323, n. 1

23

(1985), the Supreme Court indicated that given that the petitioner had offered little more than undeveloped assertions that the assistance of a criminal investigator, a fingerprint expert, and a ballistics expert would be beneficial, there was no due process deprivation by the state court judge's denial of these requests. Because the petitioner failed to make such a showing, the Supreme Court indicated that there was "no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought." *Id.*

A number of courts have held that a habeas petitioner was not entitled to habeas relief based on a state trial court's failure to appoint a non-psychiatric expert witness, because the Supreme Court has yet to extend *Ake* to such non-psychiatric expert witnesses. *See Morva v. Zook,* 821 F. 3d 517, 524-25 (4th Cir. 2016); *cert. den.* 137 S. Ct. 1068 (2017)(Virginia Supreme Court's determination that capital murder defendant had no due process right to appointment of a prison-risk-assessment expert, in order to rebut Commonwealth's claim that defendant would be a future danger to society if life sentence was imposed, was not contrary to clearly established federal law, as would warrant habeas relief; there was no clearly established federal law requiring the appointment of a state-funded nonpsychiatric expert);*Weeks v. Angelone,* 176 F. 3d 249, 264-65 (4th Cir. 1999)(habeas petitioner's entitlement to expert assistance at trial in the fields of pathology and ballistics would require the announcement of a new rule, in violation of *Teague's* antiretroactivity principle, because at the time that petitioner's conviction became final, Supreme Court precedent required only that an indigent defendant be appointed psychiatric experts when his sanity was at issue); *Jackson v. Ylst,* 921 F. 2d 882, 886 (9th Cir. 1990)(habeas petitioner's claim that his due process rights violated when he denied the appointment of an

expert on eyewitness identification proposed a new rule in violation of *Teague,* and therefore could not serve as a basis for federal habeas relief); *McKenzie v. Jones,* No. 00–CV–74577–DT, 2003 WL 345835, * 3 (E.D. Mich. Jan. 29, 2003)(in light of the fact that the Supreme Court had not yet extended its holding in *Ake v. Oklahoma* to require the appointment of non-psychiatric experts to indigent criminal defendants, habeas petitioner was not entitled to a certficate of appealability, because he was unable to show that the state court's refusal to appoint an independent pathologist was contrary to, or an unreasonable application of, clearly established federal law); *Walters v. Maschner,* 151 F. Supp. 2d 1068, 1076 (N.D. Iowa 2001)(petitioner had no clearly established right to the appointment of an expert to aid in jury selection, thus, the denial of such an expert did not warrant federal habeas relief).[3]  Because there is no clearly established Supreme Court precedent requiring the appointment of a non-psychiatric expert, petitioner is not entitled to habeas relief.

### F.  Claim # 10.  The substitution of counsel claim.

Petitioner next claims that the trial judge wrongly denied his request for a new attorney.

Petitioner sent a letter to the trial judge on May 28, 2008, requesting substitute counsel. See Petitioner's Exhibit D.   At a pre-trial hearing, the judge asked petitioner why he wanted to replace counsel.  Petitioner claimed that he did not request that counsel be terminated and instead alleged his attorney brought that motion for substitute counsel. (Tr. 6/9/08 Motion Tr., pp. 3-4). Petitioner's lawyer told the judge he noticed the issue for hearing only because of petitioner's

---

[3]  The Sixth Circuit has noted that the majority opinion in *Ake* "emphasized that its ruling was limited in cases in which the defendant's mental condition was "seriously in question" upon the defendant's "threshhold showing." *See Smith v. Mitchell,* 348 F. 3d 177, 207 (6th Cir. 2003).

letter. (*Id.*, p. 4.) During that hearing, the trial judge attempted to ascertain what problems that petitioner was having with his attorney. Petitioner gave vague or unspecified answers. (*Id.*, pp. 4-9). Petitioner complained of a lack of communication with his attorney. Petitioner also indicated that if the communication improved, "then I don't see nothing wrong with why he can't carry on with the case." (*Id.*, p. 5). The court denied the motion for substitute counsel. (*Id.*, p. 9).

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984);

*See also Gonzalez-Lopez,* 548 U.S. at 151-52)("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.")(internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012).  "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64.

Petitioner is not entitled to relief for several reasons.

First, petitioner did not clearly and unequivocally request the appointment of new counsel. Although petitioner in his letter to the judge requested the replacement of his attorney, at the hearing on the motion petitioner denied that he had wanted to discharge his attorney and claimed that his attorney had been the one who had filed the motion to withdraw as counsel. Because petitioner did not clearly and unambiguously request the appointment of substitute counsel, the trial court did not err in failing to substitute counsel.  *See United States v. Rettaliata*, 833 F.2d 361, 363 (D.C. Cir. 1987).

Secondly, the judge sufficiently inquired into the petitioner's allegations of ineffectiveness against counsel at the hearing on the motion for substitute counsel. In light of the fact that there were "multiple lengthy discussions" with petitioner and his defense counsel about their alleged conflicts, there was no abuse of discretion in denying his motion for substitute counsel. *See U.S. v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009).

Thirdly, petitioner failed to establish good cause for substitution of counsel, where he failed to show that any conflict between himself and his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. *See United States v. Jennings*, 83 F. 3d 145, 149 (6th Cir. 1996).

Fourth, petitioner is unable to show that he was prejudiced by the failure of the trial court to appoint substitute counsel, in light of the fact that he received effective assistance of counsel at trial. (See Claim # 11, *infra*). *U.S. v. Vasquez*, 560 F.3d at 468. Any "strained relationship" between petitioner and his attorney was not a "complete breakdown in communication" that prevented petitioner from receiving an adequate defense. *Id.* Petitioner was not entitled to substitute counsel because his complaints against counsel involved differences of opinion rather than any irreconcilable conflict or total lack of communication. *See e.g. United States v. Marrero,* 651 F.3d 453, 466 (6th Cir. 2011). Indeed, "a defendant's 'dissatisfaction with the responses he got from his lawyer, not with the lack of opportunity or his inability to talk to his lawyer or contact his lawyer,' does not establish a total lack of communication." *Id.* (quoting *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004)). Petitioner's complaints about his attorney were nothing more than a difference of opinion over strategy or dissatisfaction with the advice that his attorney gave him. The record in this case does not demonstrate that the

disagreements between the petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

The trial judge's conclusion on post-conviction review that the denial of petitioner's motion to substitute counsel did not violate his Sixth Amendment rights was not an unreasonable application of federal law, and thus petitioner is not entitled to federal habeas relief. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011). Petitioner is not entitled to relief on his tenth claim.

### G.  Claims # 11 and # 12.  The ineffective assistance of counsel claims.

The Court discusses petitioner's ineffective assistance of counsel claims together for clariy.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard

itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his eleventh claim, petitioner alleges the ineffective assistance of trial counsel.

Petitioner initially claims that he was constructively denied the effective assistance of counsel.

Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(*quoting United States v. Cronic,* 466 U.S. 648, 659 (1984)). However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

In the present case, counsel's alleged errors did not rise to the level of the constructive denial of counsel, because counsel actively represented petitioner at his trial. *Moss,* 286 F. 3d at 860-62. Defense counsel appeared at the preliminary examination on January 24, 2008 and cross-examined several of the witnesses. (Tr. 1/24/08, pp. 37-38, 122-30, 214-220). Counsel opposed the prosecutor's bindover request. (*Id.*, p. 244). Defense counsel actively participated in jury *voir dire* and exercised challenges to prospective jurors. (Tr. 11/18/08, pp. 19, 23, 45, 75-81, 87-88, 134-36, 138, 174). Defense counsel vigorously cross-examined several witnesses, including Mr. Hewitt. (Tr. 11/19/08, pp. 38-40, 85, Tr. 11/20/08, pp. 4-59, 178-80, Tr. 11/21/08, pp. 21-22, 159-61). Defense counsel made a closing argument. (Tr. 11/24/08, pp. 41-57).

The *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v. Johnson*, 474 F. 3d 236, 247 (6th Cir. 2007)(citing *Bell*, 535 U.S. at 697). In the present case, counsel's alleged failures do not amount to a complete failure to provide a defense. The presumption of prejudice therefore does not apply and petitioner would be required to show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*

Petitioner's main complaint is that his trial counsel "winged it" when cross-examining Mr. Hewitt.

To establish a reasonable probability that, but for counsel's unprofessional errors, the result of proceeding would have been different, a habeas petitioner must make more than merely speculative assertions. *See Bowen v. Foltz,* 763 F. 2d 191, 194 (6th Cir. 1985). Petitioner does not specify what additional questions should have been asked to Mr. Hewitt. Defense counsel did not perform ineffectively by not more fully examining Mr. Hewitt, when the effect of further probing was entirely speculative on the petitioner's part. *See e.g. Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

Petitioner further claims that trial counsel did not adequatelty investigate petitioner's case.

A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his or her defense. *See Hutchison v. Bell*, 303 F. 3d 720, 748 (6th Cir. 2002). Petitioner does not specify what exculpatory information should have been discovered by defense counsel. Petitioner

cannot prevail on his claim that trial counsel was ineffective for failing to adequately prepare the case or conduct a minimal investigation because he has failed to show how additional pretrial work counsel had allegedly been deficient in failing to perform would have been beneficial to his defense. *See Martin v. Mitchell,* 280 F. 3d 594, 607-08 (6th Cir. 2002).

Petitioner lastly claims that trial counsel was ineffective for failing to call alibi witnesses. Petitioner failed to attach any affidavits from these witnesses to his motion for relief from judgment or his appeal from the denial of his motion, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, the petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle,* 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these alibi witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007). Petitioner is not entitled to relief on his eleventh claim.

In his twelfth claim, petitioner alleges that appellate counsel was ineffective in failing to adequately investigate the alleged recantation affidavit from Mr. Hewitt, before presenting it in a

post-trial motion for a new trial based on Mr. Hewitt's alleged recantation. Petitioner specifically claims that appellate counsel should have contacted the Notary Public who notarized Mr. Hewitt's signed recantation and have brought him or her to court to verify that Mr. Hewitt signed the affidavit, in order to rebut the prosecutor's argument at the post-trial motion hearing that Mr. Hewitt's signature on the recantation may not have been authentic because it looked different than Mr. Hewitt's signature on his earlier proffer agreement with the prosecutor.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner failed to show that appellate counsel was ineffective in the handling of Mr. Hewitt's recantation. Appellate counsel filed a motion for a new trial based on this alleged recantation. A post-trial hearing was conducted on the motion on August 10, 2009. Appellate counsel requested a new trial based on Mr. Hewitt's recantation and noted that it had been signed in front of a Notary Public in Jackson County. (Tr. 8/10/09, pp. 3-4, 7). In denying the motion, the judge noted the question about the veracity of Mr. Hewitt's signature but denied the motion primarily on the ground that Mr. Hewitt's testimony "was taken rather carefully" and was part of a plea agreement in which Mr. Hewitt had the advice of counsel. Under the circumstances, the judge was not persuaded that a new trial should be granted. (*Id.*, p. 9).

The Michigan Court of Appeals rejected petitioner's claim on appeal:

> Defendant's final argument is that the trial court abused its
> discretion in denying his motion for a new trial or evidentiary
> hearing based on a recanting affidavit purportedly from Hewitt.
> Our review of the record on this issue leads us to conclude that

34

defendant has failed to establish that a different result was
probable on retrial. Accordingly, the trial court did not abuse its
discretion in denying defendant's motion, which was based on a
highly suspect affidavit from Hewitt in which he recanted his trial
testimony.

*People v. Davis,* 2010 WL 2507029, * 5.

In the present case, even if Mr. Hewitt's signature on the affidavit was authentic,

petitioner is unable to show that he was prejudiced by appellate counsel's handling of the

recantation issue because courts view "with great suspicion the recantation testimony of trial

witnesses in post-conviction proceedings." *See Thomas v. United States,* 849 F. 3d 669, 678 (6th

Cir. 2017)(quoting *Brooks v. Tennessee,* 626 F.3d 878, 897 (6th Cir. 2010)). Even if appellate

counsel had brought the Notary Public in to verify that Mr. Hewitt had signed the recantation

affidavit, petitioner is unable to show, based on the usual suspicion given to recantations, that the

trial or appellate courts would have granted petitioner a new trial. Petitioner is not entitled to

relief on his twelfth claim.

### H. Claims # 13-18. The prosecutorial misconduct claims.

Petitioner next contends he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487,

512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal

defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the

resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181

(1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct

will thus form the basis for habeas relief only if the conduct was so egregious as to render the

entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

In his thirteenth claim, petitioner argues that the prosecutor appealed to the jury's civic duty in closing argument by stating; "That is why you get paid the big money as jurors, is to find the defendant guilty as charged in these matters." (Tr. 11/24/08, p. 102).

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F. 3d 486, 539 (6th Cir. 2000)(*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

The prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 F. App'x. 689, 701 (6th Cir. 2006).  Additionally, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision (Tr. 11/24/08, p. 103) defeats petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. *See Knapp v. White,* 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Lastly, petitioner points to only one comment made by the prosecutor as part of a 52 page argument. (*Id.,* pp. 4-41; 89-102).  Because the prosecutor's civic duty argument was an isolated

part of the closing argument, petitioner is not entitled to habeas relief. *See Martin v. Foltz,* 773 F. 2d 711, 716-17 (6th Cir. 1985).

In his fourteenth claim, petitioner contends that the prosecutor misrepresented facts by arguing that petitioner had threatened Mr. Crowley.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d at 535. However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, there was some record support for the prosecutor's argument. Crowley's preliminary examination testimony, which was read into the record at trial after he refused to testify, indicated that he had been threatened. (Tr. 1/24/08, p. 208). Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

In his fifteenth claim, petitioner argues that the prosecutor attempted to inflame the passions of the jury by asking them to imagine what would have happened if the jury had learned of the facts of this case from third-party witnesses had the petitioner and his co-defendants had been successful in killing the victims. (Tr. 11/24/08, p. 13). Petitioner ignores the fact that the prosecutor brought this up to argue that petitioner's actions had been premeditated and

deliberate. (*Id.*).  Although the prosecutor's remarks reminded the jurors of the seriousness of the crimes of which petitioner stood accused, he did not ask the jurors to sympathize for the victims, and his description of the crime was based on the evidence.  Accordingly, the state court reasonably determined that the prosecutor's comments did not manipulate or exploit the passions of the jurors, so as to entitle petitioner to habeas relief. *See Clarke v. Warren*, 556 F. App'x. 396, 407 (6th Cir. 2014).

In his sixteenth claim, petitioner argues that the prosecutor committed misconduct by offering unsworn testimony to refresh Mr. Crowley's recollection and then to impeach him during direct examination.

Although petitioner alleges prosecutorial misconduct, his claim "amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009).  "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  The trial judge concluded that the prosecutor's methods in attempting to refresh Mr. Crowley's memory and/or to impeach him were proper. (Tr. 11/20/08, p. 146).  There was no violation of clearly established federal law for the prosecutor to rely on the trial judge's ruling in admitting this evidence, regardless if the trial judge's ruling was correct, thus petitioner is not entitled to habeas relief on his sixteenth claim. *See Key v. Rapelje*, 634 F. App'x. 141, 146–47 (6th Cir. 2015).

In his seventeenth claim, petitioner alleges that the prosecutor alluded to petitioner's post-*Miranda* silence by observing that Mr. Hewitt chose to speak with the police.  Petitioner contends that these comments somehow suggested that the jurors should consider petitioner's

failure to speak with the police.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *see also Gravley v. Mills*, 87 F.3d 779, 786 (6th Cir. 1996). However, isolated references to a defendant's exercise of his right to remain silent do not deprive a criminal defendant of a fair trial when the prosecution does not use the defendant's silence to prove his guilt. *U.S. v. Weinstock*, 153 F.3d 272, 280-81 (6th Cir. 1998); *see also U.S. v. Robinson,* 357 F. App'x. 677, 683 (6th Cir. 2009)(both citing *Greer v. Miller,* 483 U.S. 756 (1987)).

In the present case, the prosecutor did not explicitly or implicitly comment on petitioner's right to remain silent. The prosecutor, at most, made an oblique reference to petitioner's exercising his right to remain silent, which is not egregious enough to amount to a *Doyle* violation. *See Schrader v. Fowler*, 852 F. 2d 569, 1988 WL 76521, * 6 (6th Cir. July 21, 1988)(Table). Petitioner is not entitled to relief on his seventeenth claim.

Petitioner in his eighteenth claim alleges that the prosecutor implied special knowledge of facts that had not been disclosed to the jury when he argued: "What [Hewitt] said to [the police] is mostly not in evidence in this case because of the rules of evidence." (Tr. 11/24/08, p. 14).

The prosecutor in this case did not argue any facts that had not been introduced into evidence. When the prosecutor referred to Hewitt's statements which had not been introduced into evidence, he did so only to explain why the attorneys present witnesses in court rather than just giving the jury police reports or transcripts from other hearings, so as to protect the

defendant's right of confrontation.  The prosecutor also did this to explain why the attorneys impeached the witnesses the way they did.  (Tr. 11/24/08, pp. 14-15).  Such comments were not improper. *See e.g. United States v. Washam*, 468 F. App'x 568, 573–74 (6th Cir. 2012)(when viewed in context, there was nothing improper about prosecutor's opening statement informing jury that some evidence about the crime and defendant's past would not be admitted).  In any event, the prosecutor's remarks were ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 11/24/08, pp. 105-06). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003). Petitioner is not entitled to relief on his eighteenth claim.

### I.  Claims # 19 and # 20.  The Confrontation Clause claims.

Petitioner lastly alleges that the trial judge violated his Sixth Amendment right to confrontation by admitting Travis Crowley's preliminary examination testimony at trial after declaring Travis Crowley unavailable to testify when Crowley refused to testify at petitioner's trial.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004).  Although an exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination, this exception is inapplicable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968);

*See also Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007).

The Michigan Court of Appeals reasonably rejected petitioner's Confrontation Clause claim. Although Mr. Crowley appeared at petitioner's trial and was called by the prosecution to testify, he basically testified to having a lack of memory as to a number of circumstances relating to the crime. (Tr. 11/20/08, pp. 125-150). The following exchange then occurred between the judge, the prosecutor and Mr. Crowley:

> [Mr. Crowley]: I ain't got nothin' to say, man. I ain't got nothin' to say.
>
> [Prosecutor]: What does that mean, you don't want to testify?
>
> [Mr. Crowley]: I ain't talkin', that's what I'm sayin'.
>
> * * *
>
> The COURT: Mr. Crowley, you're required to answer the questions. Are you refusing to answer questions?
>
> THE DEFENDANT (Sic): I'm done man.
>
> (*Id.*, p. 150-51).

The Michigan Court of Appeals reasonably determined that Mr. Crowley was unavailable where he refused to testify at trial. *See United States v. Jones*, 124 F.3d 781, 786 (6th Cir.1997); *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir.1986); *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir.1980); see also Mich. R. Evid. 804(a)(2) (stating that a witness is "unavailable" if he or she "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so").

The second prong for admission of Mr. Crowley's preliminary examination testimony was also satisfied because petitioner had an opportunity to cross-examine him at the preliminary examination. (*See* 1/24/08, pp. 210-20, 230-38). Petitioner claims that he did not have the same

opportunity to cross-examine Mr. Crowley at the preliminary examination as he would have at trial because the prosecutor only needs to establish probable cause that a crime was committed and that petitioner committed a crime to obtain a bindover after the preliminary examination.

Petitioner is not entitled to habeas relief in the absence of any Supreme Court precedent to support his argument that his opportunity to cross-examine Mr. Crowley at his own preliminary hearing was inadequate to satisfy the requirements of the Confrontation Clause. *See Williams v. Bauman,* 759 F. 3d 630, 635-36 (6th Cir. 2014). Although "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes[.]," *See Al–Timimi v. Jackson*, 379 F. App'x. 435, 437 (6th Cir.2010); *see also Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir.2007)(doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination")(internal quotation marks omitted), the Sixth Circuit in *Al-Timini* noted that the Supreme Court in *Barber* indicated that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." *Al-Timini*, 379 F. App'x. at 438 (quoting *Barber*, 390 U.S. at 725-26). The Sixth Circuit in *Al-Timini* also noted that the Supreme Court appeared "to have retreated from the doubts it expressed in *Barber* by finding that the opportunity for cross-examination afforded at a preliminary examination may satisfy the Confrontation Clause in at least some circumstances." *Id.* The Sixth Circuit in *Al-Timini* observed that the Supreme Court in the cases of *California v. Green,* 399 U.S. 149 (1970) and *Ohio v. Roberts,* 448 U.S. 56 (1980) had found

no Confrontation Clause violation by the admission of an unavailable witness' preliminary examination testimony because the defendants in both cases had the opportunity to cross-examine the witness at the preliminary examination. *Al-Timini*, 379 F. App'x. at 438-39. At the preliminary hearing in this case, petitioner was represented by counsel, who was given a full opportunity to cross-examine Mr. Crowley, without any restriction by the examining magistrate, and who took advantage of this opportunity to the extent that he saw fit. Accordingly, the trial judge's decision to admit Mr. Crowley's testimony from the preliminary examination when he refused to testify was not contrary to, or an unreasonable application of clearly established federal law. *Williams,* 759 F. 3d at 635-36; *Al-Timini*, 379 F. App'x. at 439. Petitioner is not entitled to relief on his nineteenth and twentieth claims.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should

issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. [4]

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V.  ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE;**

(2) A certificate of appealability is **DENIED;** and

(3) Petitioner is **DENIED** leave to appeal *in forma pauperis*.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 23, 2017

---

[4] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2017, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager Generalist